UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

JUDGE REBECCA R. PALLMEYER

DOROTHY SPRAGGINS-GULLY )
            Plaintiff )   MAGISTRATE JUDGE LEVIN
)    CIVIL  ACTION
)
vs. )
)**00 C 2846**
CHICAGO SCHOOL REFORM BOARD OF TRUSTEES: )
Gery Chico, Norman R. Bobins, Tariq Butt, )
Avis LaVelle and Gene R. Saffold of the )
Board of Education of the City of Chicago, )
now known as, the BOARD OF EDUCATION OF )
THE CITY OF CHICAGO )

**DOCKETED**

MAY 12 2000

## COMPLAINT

Now comes the Plaintiff, DOROTHY SPRAGGINS-GULLY,
Pro Se, and states as follows:

### INTRODUCTION

The CHICAGO SCHOOL REFORM BOARD OF TRUSTEES (CSRBT)
willfully and wrongfully terminated Plaintiff from her job on
or about May 26, 1999,

The CHICAGO SCHOOL REFORM BOARD OF TRUSTEES, and
its agents, used hearsay, lack of discovery, influential
connections, lies, planted false allegations, suppression of
evidence, and "voluminous" papers of false allegations as
documentary evidence to terminate the Plaintiff from her job.

1.

## COUNT I.
## LEGITIMATE BUSINESS REASONS FOR ITS ACTIONS

1. Plaintiff states that the pretextual reaon that the Chicago Reform Board of Trustees used to terminate her from her job was namely: That CSRBT "had established a legitimate business reason for the disciplinary actions taken against Plaintiff" was a lie.

2. Plaintiff states that CSRBT stated that there was "voluminous documentary evidence that Plaintiff was a long-standing disciplinary problem, not just according to [principals] Lawrence Head [and Jacqueline A. Baker], but to co-workers, administrators, and parents as well".

3. Plaintiff states that is is a genuine issue of material fact that she has never had a disciplinary action brought against her prior to the tenure of principals JACQUELINE A. BAKER and LAWRENCE HEAD.

4. Plaintiff states that it is a genuine issue of MATERIAL FACT THAT SHE HAS HAD A SUPERIOR RATING FROM EIGHT DIFFERENT PRINCIPALS from 1969 through 1991 (A "NO RATING" was given for years: 1982-1984 because the school did not have a principal, or it was the first year assisgnment for the principal).

5. Plaintiff states that it is a genuine issue of material fact THAT SHE WAS APPOINTED AS TEACHER REPRESENTATIVE TO THE LOCAL SCHOOL COUNCIL BY THE BOARD OF EDUCATION, THAT SHE WAS APPOINTED, AFTER RECOMMENDATIONS FROM CO-WORKERS, AS TEACHER FACILITATOR, AND THAT SHE WAS ELECTED, NOT ONCE BUT TWICE, BY HER

CO-WORKERS TO BE THE UNION DELEGATE FOR THE POPE SCHOOL. Thus, it is unreasonable to suggest that the Plaintiff did not get along with her co-workers.

6. Plaintiff states that many of the parents that complained were workers within the school and under the principals' control and in fear of losing his/her job; members of the Local School Council who condoned and shared in wrongdoings of the principals, and parents who wanted the Plaintiff to give grades that were not deserved in order for the children of the parents to pass to the next grade.

7. Plaintiff states that there were only a few teachers and staff members involved in complaints against her, and they were out for power and money that additional jobs would bring them from the principals. Many of the staff members who complained WERE USED BY BOTH PRINCIPALS, JACQUELINE A. BAKER and LAWRENCE HEAD.

8. Plaintiff states that many of the complaints against her were retaliatory in nature because of the letters and grievances that she wrote against them for breaking the BOARD and UNION AGREEMENT as well as REFORM and other LAWS.

9. Plaintiff states that there is a genuine issue of fact attesting to the complaining members about interfering with the "PROTECTED UNION ACTIVITIES" of the Union Delegate and Plaintiff.

10. Plaintiff states that the only administrators that have brought charges against her are as follows: JACQUELINE A.

BAKER, CHICAGO SCHOOL REFORM BOARD OF TRUSTEES: GERY CHICO, NORMAN R. BOBINS, TARIG BUTT, AVIS LAVELLE, GENE R. SAFFOLD, PAUL VALLAS, CHIEF EXECUTIVE OFFICER, and LAWRENCE HEAD.

11. Plaintiff states that the above administrators, in many instances, knew the truth long before they took action with a "WARNING RESOLUTION" and "AN ADMINISTRATIVE HEARING" but that they chose to abuse the power of their office as well of abuse of discretion.

12. Plaintiff states the administrators did MUCH MORE THAN THE LIES THEY TOLD, and that THEY ARRANGED, BROUGHT IN DATED FALSE INFORMATION AS FAR BACK AS 1993, CONDONED WRONG-DOINGS, PLANTED FALSE INFORMATION, REFUSED TO ALLOW PLAINTIFF'S INFORMATION and SUPPRESED EVIDENCE, in order to terminate the PlAINTIFF FROM HER JOB.

## COUNT II.
## ADMINISTRATIVE REVIEW ACT

1. Plaintiff states the Administrative Review Act (the "Act"), 735 ILCS 5/3-101 et seq., applies to the instant matter and was the exclusive method of review for Plaintiff before her termination from her job.

2 Plaintiff states that the Board of Education and its attorneys refused to provide the PRE SUSPENSION tape and prevented the Plaintiff from taping the hearing.

4.

3. The Plaintiff states that the HEARING OFFICER nor the plaintiff's attorney would honor her request to enter the tape into evidence.

4. Plaintiff states that the tape revealed that the attorneys for the Board of Education knew that they were doing wrong, as one attorney stated, Oh! We know you did not do these things, Mrs. Gully, but we are going to put them down for background information anyway.

Plaintiff further states that there was no discussion of the specifications and charges beyond the first two-or-three specifications. Therefore, it was hardly a hearing of the charges and specifications.

5. Plaintiff states that the principals, JACQUELINE A. BAKER and LAWRENCE HEAD lied about SPECIFICATION-1. that

"On December 18, 1996, the parent of a Pope School Student observed you shoving her child and a verbal altercation ensued between you and the parent. When Assistant Principal Gloria Thomas attempted to intervene to defuse the situation, you repeatedly struck her."

6. Plaintiff states that her pleadings, deposition, answers to interrogatories, and admissions on file, together with her affidavit was not enough to satisfy the Board and others.

7. Plaintiff states that she even provided a CERTIFIED STATEMENT OF DISPOSITION FROM THE CIRCUIT COURT OF COOK COUNTY which was not entered or accepted at the "hearing".

8. Plaintiff states that Head falsely had Plaintiff arrested for assaulting Ms. Thomas, gave false statements to the police and others and only quit lying about the event when a Cook County Judge confronted Head, under oath in open court, at which time Head admitted that he had not seen Plaintiff assault/ hit Ms. Thomas--this in August 1997--and then in December 1998, Head lies under oath in his deposition and says that he saw Plaintiff hit Ms. Thomas.

9. Plaintiff states that in September 1997, less than one week of school, principal JACQUELINE A. BAKER restated the same false lie that Head had stated. Plaintiff states that principal Baker was not at the Pope School until months later after the alleged lie was told on December 18, 1996.

10. Plaintiff states that PAUL VALLAS and THE CHICAGO REFORM KNEW ABOUT THE LIE BEFORE THEY BROUGHT CHARGES BECAUSE PLAINTIFF PLACE THEM ON NOTICE OF THE SAME AT "BOARD MEETINGS".

11. Plaintiff states that a day after the Court hearing in Circuit (1997), Ms. Thomas apologized to the Plaintiff about bringing charges against her.

12. Plaintiff states that it is unreasonable for a person to use the alleged charges of Gloria Thomas against Plaintiff on hearsay, and at the same time state that THOMAS AND PLAINTIFF were two of the worse teachers in the system.

13. Plaintiff states that principals HEAD and BAKER lied about SPECIFICATION-2, namely:

"You inappropriately disciplined a student

by making the child sit in a closet."

14. Plaintiff states that principal Head made up the lie, principal Baker restated the same lie without giving it a date, Paul Vallas included it in his charges and the BOARD OF TRUSTEES fired her because of the lie.

15. Plaintiff states that none of the above people could

6.

reasonablyly believe that Plaintiff was guilty of CHARGE-7 namely:

> "Conduct which is cruel, immoral, negligent, criminal or causes psychological or physicaal harm or injury to a student in violation of section 4-8 of the Employee Discipline Code"

16. Plaintiff states that not only did the Board of Trustees terminate the Plaintiff from her job based on the lie, they also broke the law at 820 ILCS 40/13 [Record of investigation by Department of Children and Family Services: expungement] Sec, 13, An employer shall not gather or keep a record identifying an employee as the subject of an investigation by the Department of Children and Family Services if the investigation by the Department of Children and Family Services resulted in an unfounded report as specified in the Abused and Neglected Child Reporting Act [325 ILCS 5/1 et seq.].

17. Plaintiff states that she put the Board of Trustees on notice the day that it was told in 1996. A report was taken at the Board.

18. Plaintiff states that there is a genuine issue of material fact that principal JACQUELINE A. BAKER lied about SPECIFICATION-3, namely:

> "You have engaged your students in an inappropriate discussion about slang and

7.

colloquial expressions used to describe female genitalia and have encouraged students to use the workd "pussy" in this context. In addition, you gave your students the assignment of looking up in the dictionary the word "bitch".

19. Plaintiff states that she did not engage in any inappropriate discussion about slang and colloquial expressions used to describe female genitalia, encourage students to use the word "pussy" in that context, nor did she assign students to specifically look up the word "bitch".

20. Plaintiff states that principal JACQUELINE A. BAKER was fully aware that the "STUDENT" who used the words had use them before. Plaintiff states that the student had also used other inappropriate words. The student called another student "GAY". Plaintiff states that a parent came to speak with principal Baker on three different occasions, but to the Plaintiff's knowledge, principal Baker never met with the parent about the matter.

21. Plaintiff states that profanity use was rampant at the Pope School, and had been since 1991. Plaintiff states that she did not get any help from the administration of Baker or Head to curtail the use of profanity.

22. Plaintiff states that both principals handled students under "White Teachers" differently than they handled students under the Plaintiff; Students were expelled and

8.

the teacher was not written up.

23. Plaintiff further states that in the absence of a BOARD LIST OF PROFANE WORDS, and having been informed by some parents that certain words can be used by his/her child because they are in the Bible, or because they are used that way ethnically, Plaintiff made a CLASS RULE that words had to be used in the proper context according to the subject matter.

24. Plaintiff states that there is a genuine issue of material fact that principal JACQUELINE A. BAKER lied about SPECIFICATION-4, namely

> "Because of your inappropriate interactions
> with students such as those described in
> paragraphs 1 through 3, above, parents have
> written repeatedly to the principal complain-
> ing about your conduct and requesting that
> their children be reassigned from your
> classroom."

25. Plaintiff states that principal JACQUELINE A. BAKER never brought it to Plaintiff's attention that parents had requested that children be reassigned from her classroom because of any reason.

26. HOWEVER, many months later, Plaintiff DISCOVERED IN HER PERSONNEL FILE AROUND FORTY BOGUS LETTERS, some dating back in time to the administration of principal LAWRENCE HEAD, some with wrong dates and accounts, and some just LIES, such as going by a parent's home and being asked to leave.

27.  Many of the letters, allegedly from students, were written in "BOILER-PLATE" language and alleged that a "YOUNGER WHITE TEACHER" had given the same students grades of A and B, and that the Plaintiff had not.

28.  Plaintiff states that many of the letters were not signed.

29.  Plaintiff states that letter(s) written in support of the Plaintiff by parents were used against her by the Board because they only showed part of the letter.

30.  Plaintiff states that principal JACQUELINE A. BAKER admitted to placing the letters in Plaintiff's file, and that an       investigation had been conducted against Plaintiff WITHOUT HER KNOWLEDGE.

31.  Plaintiff states that as an employee, she had a right to be represented by the Union steward at an investigatory interview with her employer when she reasonably believe that the interview may lead to disciplinary action.

This right was established by the United States Supreme Court in the case of NLRB v. Weingarten, 420 U.S. 251.

32.  Plaintiff states that PAUL VALLAS brought charges against her on the LIES, the HEARING OFFICER heard her speak of the letters but did not admit them, and THE BOARD OF TRUSTEES fired Plaintiff because of the lies.

33.  Plaintiff states that principal BAKER lied in

parts of SPECIFICATION-5, namely:

> "When a parent came to school to request
> an early dismissal for her child, you
> disputed that she was the child's "real"
> parent and later reported this incident
> as a kidnapping to Safety & Security,
> the Office of Investigations and Human
> Resources, telling personnel in each of
> these offices that the principal was too
> busy to address this situation."

34. Plaintiff states that she did report that a parent, who was not the parent of two children, took the sudents from the Plaintiff's classroom, but principal BAKER lied that Plaintiff had reported it as a kidnapping, or that "she" stated that the principal was too busy to addresss the situation.

35. Plaintiff states that the principal JACQUELINE A. BAKER lied about SPECIFICATION-6, namely:

> "On September 24, 1997, rather than arrange
> an appropriate parent-teacher conference to
> discuss a students behavior, you put the
> student out of your classroom and told her
> that she could not return until her mother
> came to school."

36. Plaintiff states that it has always been her practice to make sure that a parent knew that his/her child was faced with a problem.

37. Plaintiff states that she made a HOME VISIT to

the student's home after school on the day before, or September 23, 1997, and that the PARENT FOLLOWED UP with a return visit on September 24, 1997.

38. Plaintiff states that the principal Baker would not address or speak to many of the parents who came to address the problems of his/her child.

39. Plaintiff states that principal BAKER lied about SPECIFICATION-7, namely:

> "You continue to use your classroom as a forum to ventilate your concerns and opinions about school administrators as well as various personnel matters relating your employment with the Chicago Public Schools. You improperly attempt to embroil students and their families in your personal disputes with CPS administrators including encouraging letter-writing campaigns to address these same personal issues."

40. Plaintiff states that the above is a statement to which no answer is really required, as the principal BAKER and PAUL VALLAS, Chief Executive Officer gave no "evidence or documents', but rather relied on the hearsay conclusions of the person holding the titled office appointment.

41. Plaintiff states that on occasion when she spoke of administrators, SHE USED BOARD OF EDUCATION APPROVED MATERIALS.

42. Plaintiff states that when she used the Board's Local School Council Teacher Lesson Plan, it met with a ONE HUNDRED (100%) PER CENT SUCCESS RATE, AND MORE.

43. Plaintiff states that an ALDERMAN promised to adopt the school because of the students following the BOARD APPROVED objectives and activities;

Plaintiff states that the lesson plan booklet was not out of date then nor is it now.

44. Plaintiff states that there is a genuine issue of material facts that principal JACQUELINE A BAKER lied about SPECIFICATION-8, namely:

"You have been disciplined repeatedly for multiple and ongoing acts of insubordination. Despite repeated oral and written reprimands, you continue to engage in repeated acts of insubordination which greatly disrupts the learning and working environment at the Pope Elementary School. The numerous acts of insubordination include but are not limited to the following:

8 a. You continue to allow your students out of the classroom during your break periods causing a disruption in the institutional program for these students as well as those

13.

in adjacent classrooms."

45. Plaintiff states that the statement is mere gibberish, as well as a lie, for she had absolutely no control of what the person did in the classroom after she was relieved for her break.

8b. "On August 20, 1997, you left the school at 1:30 p.m. without authori- zation." This lie was changed to a later date.

46. Plaintiff states that school was not even in session on August 20, 1997.

47. Plaintiff states that after she had informed the principal JACQUELINE A. BAKER of the lie, she changed the "date and lied about the Plaintiff not working during her lunch hour.

48. Plaintiff states that when BAKER changed the date she also lied about the Plaintiff not having been present enough time to be counted as being there for the entire day. However, BAKER marked the Plaintiff absent for half of a day.

8c. "Notwithstanding written and oral directives proscribing the use of students as messengers except in emergency situations, you continue to employ students as messengers."

49.  Plaintiff states that she did not send messengers to the office except in emergency situations.

8d.  "Rather than utilize appropriate disciplinary processes, you have called the Chicago Police Department in an attempt to address alleged minor student discipline problems."

50.  Plaintiff states that there is genuine issue of material facts that when Plaintiff went to the Police Department that she addressed "serious" matter, and principal Baker admitted that the matters were serious.

51.  Plaintiff states that the Board of Trustees knew that the disciplinary problems were serious because she had placed them on notice with evidence at a Board Meeting.

8e.  "On October 17, 1997, you refused to accept a written communication from the principal which the security monitor had been instructed to deliver to you.  On that occasion, you also refused to take your students back to their classroom and you attempted to

interfere with another staff member

who attempted to return your students

to their room.  Your behavior in this

instance was so disruptive that the

principal was forced to instruct you

to leave the building."

52.  Plaintiff denies each and every allegation in
Specification 8e, except that she was forced to leave the building.

8f. "You continue to interrupt staff meetings

to expound on union and personal issues."

53.  Plaintiff states that from the first day of school
until the last day of school the following year the Pope School
was to operate under a BOARD and UNION program, the RESTRUCTURED
SCHOOL DAY-----which the principal and the Union Delegate were to
monitor.  However, the principal, JACQUELINE A BAKER, lied about
Plaintiff interrupting meetings to expound on union issues, and
Plaintiff does not know what "personal issues" were addressed as
principal BAKER did not provide any examples.

8g.  "You continue to address the principal

and office staff in a loud,  discourteous,

and unprofessional manner."

54.  Plaintiff denies each and every allegation in
Specification 8g.

16.

55. Plaintiff states that more items were discussed at the Hearing and may be found in the transcript addressing the lies stated in the Warning Resolution alleged violations.

56. Plaintiff states that not all of the pertinent information was summarized in the POST BRIEFS, not even one half.

57. Plaintiff states that she has been traumatized the the LIES that the Hearing Officer made, namely:

1. "Gully failed to provide timely Failure Intervention Notices, properly completed to reflect the individual student's area of difficulty. She did not have her grade book filled out reflecting the subjects and grades for each child.

2. She failed 18 of 19 fifth grade students.

3. She failed 24 of 28 students.

4. She added unauthorized language to the back of the form.

5. Gully's defiance, insubordination and outright dereliction of duty to her students her school and the school system is inexcusable. She was counseled, she was warned, and still refused to properly complete the necessary documents and to maintain necessary records.

6. Gully continuously failed to submit her lesson plans on time. She generally submitted them after lessons were over. Similarly, she

generally submitted them after lessons were over. Similarly, she did not submit grade books and attendance sheets at scheduled times.

7. Gully's lack of classroom management and control was a serious problem for the school as well as for the children.

8. Gully was constantly taking children to the main office to be disciplined leaving the balance of her class unsupervised and deprived of instruction time.

9. Gully was repeatedly counseled, and adequately warned in writing, yet she persisted in her disregard the school and Board polices.

10. Gully's confrontation and insubordination became constants.

11. Interestingly, the comments of the Region Education Officer, Dr. Hazel Steward as to why she removed the former principal are telling. She said most of his time was taken up with his attempts remove Gully from the school...he was just focusing on Mrs. Gully and the school was just up for GRABS...he was channeling all of his energy on Ms. Gully and how he felt she need[ed] to be removed. Dr. Steward said she removed him because he was just consumed with the Gully project...so everything else was going down the drain so far as the school was concerned.

12. With the removal of the former principal and a new administrative team brought in to operate Pope School--nothing changed. Gully continued her behaviorial patterns of confrontation and insubordination.

13. Probably the greatest harm inflicted by Gully was to the children of Pope School entrusted to her care. Instead of having those young malleable minds shaped by positive educational experiences, they were left with memories of classroom confusion, confrontation, disciplinary threats, teacher conflict with authority figures, and unexplained failure. Scars which they will carry for their entire lives.

14. The question of remediability in this case is moot. Gully's continued insubordination, her violation of the rules, her refusal to abide by Warnings which she had received is sufficient evidence that she will not change her behavior.

15. The Board has proved by a preponderance of the evidence that there is substantial cause to terminate Gully's employment

19.

with the Chicago Public School System.

58. Plaintiff states that the Hearing Office, JOHN F. ROZNER, failed to admit evidence that PRINCIPAL LAWRENCE HEAD had been fired from the Board, but not by the reasons DR. STEWARD stated, and that she lied.

Plaintiff states that DR. STEWARDS's testimony is part of the public "HEARING" HELD FOR PRINCIPAL HEAD.

59. Plaintiff states that she had informed the Board on occasions that she (along with three other teachers) did most of principal LAWRENCE HEAD'S work.

60. Plaintiff states that the Board did a "SCHOOL REPORT" and the report listed many of the allegations that the Plaintiff had reported to the Board since 1993.

61. Plaintiff states that PRINCIPAL LAWRENCE HEAD was FIRED FROM THE POPE SCHOOL IN JULY OR AUGUST OF 1997.

62. Plaintiff states that the Hearing Officer, JOHN ROZNER took no note when she stated that the principal had had her books and valuable thrown into the garbage containers, nor did he take notice that Plaintiff had reported to DR. STEWARD, with witnesses, matter on records, report cards and lesson plans. (This allegation refers to principal BAKER.)

63. Plaintiff states that ROZNER did not even see the relevance of the student's previous scores before they were in the Plaintiff's classroom showing them to be YEARS BEHIND; NOR, DID HE REQUEST DR. HAZEL STEWARD TO SHOW EVIDENCE OR TO PROVE THE LIES THAT SHE TOLD CONCERNING THE PLAINTIFF'S STUDENTS.

64. BAKER or ROZNER did not show or prove how Plaintiff had caused psychological or physical harm to any student.

65. BAKER or ROZNER did not state where Darnisha, a student in her classroom urinated on herself--as she did not urinate in the classroom, and Plaintiff does not know what happened to her when she left the classroom without permission.

66. ROZNER did not take note of how many times BAKER had changed allegations: from one or two times, to 50-75%; From talking to students in a demeaning way, to pulling and hitting students

67. Rozner did not take notice that principal BAKER had kept Plaintiff's grade book for 35 days or what he expected Plaintiff to do in order to get it back from her.

## COUNT III.

### BREACHES

1. Plaintiff states that she was not provided all of the materials to work with the students: books, equipment, records, or former report cards.

2. Plaintiff states that the Board also had a duty to provide safety and good healthy conditions to the teachers and the students, but the Board did not provide the services.

## COUNT IV.

### TORTS

21.

1. Plaintiff states that the Board lied about not committing the following violations and torts.

      a. Due Process for teacher and students

      b. Defamation

      c. Infliction of Emotional Distress

      d. NEGLIGENCE

      e. Invasion of Privacy

      f. Malicious Prosecution

      g. Bias Police Relations

      h. Fraud and Misrepresentation

      i. Local School Council

      i. Labor Relations

2. Plaintiff states that the evidence concerning these matters were not allowed in the Post Briefs and that she can provide evidence during discovery time if allowed by this Court.

## COUNT V.

## DISCRIMINATION

1. Plaintiff states that the Board and its agents lied about treating "WHITE TEACHERS" differently than the Plaintiff in matters concerning some, but not all of the following:

      a. Reporting time

      b. Reporting grades

      c. Reporting on Local School Matters

      d. Reporting children without teachers for years

e.  Job assignments

f.  witnesses

2.  Plaintiff states that she was told that if you want to get rid of a Black teacher--just bring a White teacher against her and the White Teacher will always win.

## AGE DISCRIMINATION

1.  Plaintiff states that she has given evidence relating to age discrimination and that it is a matter of record, and for both principals LAWRENCE HEAD  and JACQUELINE A BAKER.

2.  Plaintiff states that she was treated differently than younger teachers.

Plaintiff states that she was told that she did not need a teacher assistant but the younger teachers did.

## COUNT VI.

## NOT THE REAL REASONS FOR HER TERMINATON

1.  Plaintiff states that the reasons stated by the BOARD/CHICAGO SCHOOL REFORM BOARD OF TRUSTEES namely:     FOR PRINCIPAL LAWRENCE HEAD she was guilty of

poor performance    and

For JACQUELINE A. BAKER  that CHICAGO SCHOOL REFORM BOARD had "established a legitimate business reason for the disciplinary action taken against Plaintiff", and that "Plaintiff was a long-standing disciplinary problem, not just according to [principals] LAWRENCE HEAD and JACQUELINE A. BAKER, but co-workers, administrators, and parents as well"

23.

WERE LIES, LIES, AND MORE LIES.

2. Plaintiff states that "voluminous false evidence" was planted to make it appear as though the Board of Trustees really had a strong case, and it worked as many people formed the wrong idea about the amount of paper work and the number of days that the hearing was conducted.

3. Plaintiff states that the real reasons that the BOARD/CHICAGO SCHOOL REFORM BOARD OF TRUSTEES wanted her terminated from her job are as follows:

    a. She whistle blew about many of the breaches and deceptive practices that the BOARD and its agents used.

    b. She told about the changing of grades

    c. The lies about the Local School Council

    d. The misuse of Federal and State monies

    d. She told about corporal punishment against a teacher--NOT ONCE, BUT TWICE

    e. She asked for rules, laws, and account-ability for "ALL" and not just the teacher or Plaintiff

    f. She told of the administrators re-constituting the school using evil and deceptive forms like digging up false information on teacher(s)

    g. She told about the million of dollars not used for teaching and learning, but for other things

    h. She told about influential connections

i. She told about not following the AGREEMENT between th BOARD OF EDUCATION OF THE CITY OF CHICAGO and CHICAGO TEACHERS UNION, THE EMPLOYEE DISCIPLINE CODE AND OTHER LAWS.

4. Plaintiff states that she was emotionally devastated when SHE DISCOVERED IN HER PERSONNEL FILE a letter dated October 28, 1996 addressing several Department Head stating in part that "Mr Vallas has made it clear that he wants this teacher removed from the classroom."

5. Plaintiff states that she did not know that she had been the subject of other investigations and they she discovered a letter written by lawyers.

## COUNT VII.
### UNION AGREEMENT

1. Plaintiff states that although the Hearing Officer and principal Baker bragged about BAKER being a Union Delegate and a lawyer, principal Baker did not follow any of the laws and articles that she stated that she wrote.

## COUNT VIII.
### DAMAGES TO THE PLAINTIFF

!. Plaintiff states that because of the above acts she has suffered the following:

25.

1. Loss without pay for two years
2. Medical attention
3. Age related negative comments
4. Continued false reports to the police

_____

5. Arrested, Finger printed, and Imprisoned
6. Defamation of Character: Libel & Slander
7. A suspension of five (5) days on false charges:_____
8. More false allegations and charges placed in Plaintiff's Personnel File--SECRETLY
9. More Threats
10. Placed in unhealthy and unsafe working conditions
11. An attorney who took payment for services and on the date of the trial, as the trial was going on, called Plaintiff out in the hall and told her to agree with the Board Defendants
12. Attorneys fees, Court costs and preparation
13. False allegations of insubordination

SUSSEQUENTLY

1. More distress and stress
2, More Medical Attention
3. More age related negative comments
4. More continued false reports to the police October 31, 1997
5. Additional defamation of Character
6. More false allegations of insubordination
7. OUTRAGEOUS unhealthy and unsafe working conditions
8. More attorneys fees, Court costs
9. More false witnesses
10. Mental anguish after learning that the BOARD OF TRUSTEES, nor any of the departments housed at the Board of Education and under the supervision of the BOARD OF TRUSTEES would help Plaintiff from the onslaught of outrageous principal, but would rather support their wrong doings.
11. Termination from teaching in the Chicago Public Schools on May 26, 1999.

SEE EXHIBITS:_____
JOINER W. VENTON COMMUNITY BANK

12. Repeated false planted information in 1993-1994

26.

Plaintiff, DOROTHY SPRAGGINS-GULLY, states that the Defendants are erroneous in stating that the Board persuasively establishes that Gully's conduct during the 1996-97 and 1997-98 school years demonstrated a pattern of intentional; (a) disrespect for and violation of Board policies, rules and procedures; (b) disrespect for and violation of Pope School rules, procedures and policies; (c) repeated insubordination and refusal to comply with reasonable directives from the administrative leaders at Pope School; (d) inappropriate interaction with students/parents at Pope School, and (e) unprofessional conduct unbecoming a teacher in the Chicago Public Schools."

Plaintiff states, in fact, that Defendants and all, changed the policies, rules and procedures.

a. Defendant, JACQUELINE BAKER, changed the hours of the school day without a waiver

b. Baker did not honor the Restructured School Day Staff Development Program which was voted on by the entire staff

c. BAKER and HAZEL STEWARD were in violation of 105 ILCS 10/8 when they withheld students' school records, report cards, grades, and intervention forms as disciplinary measures against the Plaintiff

d. Principals, JACQUELINE A. BAKER and LAWRENCE HEAD, conducted volumes of "secret" and false information and placed the information in Plaintiff's personnel folder

e. BAKER demanded that the Plaintiff, and all teachers, change all "F" grades to "D" grades

f.  BAKER and HEAD made false police reports

g.  BAKER and HEAD denied preparation periods

h.  BAKER and HEAD used acts of discrimination

i.  BAKER and HEAD created unreasonable and
    unsafe working conditions

j.  BAKER and HEAD made up

k.  BAKER and HEAD used selected parents to
    further their personal causes--many of
    whom were Local School Council members

l.  BAKER and HEAD denied the Plaintiff help
    of any kind:  academic, safety,

m.  BAKER and HEAD allowed disruptive students
    to take over without rendering help

n.  BAKER and HEAD did not follow or obey
    collective bargaining articles, and/or
    Reform Law

o.  JACQUELINE BAKER did not give the required
    evaluation, but Blondean Davis did (Why?)

p.  JOHN F. ROZNER, Hearing Officer, did not
    accept my previous efficiency ratings or
    evaluations, nor did he want to hear about them

q.  ROZNER did not accept the testimony of
    Plaintiff's witnesses

r.  ROZNER granted two delays for the Defendants
    (one for moving), but stated that the
    Plaintiff was not timely with lesson plans
    when the Defendant Baker moved Plaintiff's
    records which were placed in literal garbage
    containers

ROZNER        s.  Did not adhere to established rules or laws
                  that he should have known about, and offered

                  subjective opinions about how the Plaintiff
                  should confront a hostile parent, management
                  of students, where grades "should have been",
                  deceiving parents about grades, breaking up
                  fights between students, what language administrators
                  used, how prepared the students were in the
                  classes of the Plaintiff's      , "boilerplate
                  language", etc.

t. JOHN F. ROZNER did not acknowledge the Board's removal of the previous principal, LAWRENCE HEAD, but acknowledged the principal's false, and shown to be false, allegations against the Plaintiff

u. ROZNER did not acknowledge the false and IMMORAL behavior of principals, LAWRENCE HEAD, AND JACQUELINE A. BAKER

v. PAUL VALLAS, Chief Executive Officer, wanted the Plaintiff "removed from the classroom" without showing cause

w. The Defendants, and others, did not accept one complaint presented by the Plaintiff--even after proof was given

Plaintiff states that there can be no cause for remediability if the events alleged did not take place, such as Specifications (s 1. and S 2., and others).

Plaintiff states that the only "egregious behavior" that has been shown, again and again, is that of the Defendants, and others.

PLAINTIFF STATES THAT THE DEFENDANTS, and OTHERS, WILLFULLY AND WANTONLY allowed, planted, and used false information to fire the Plaintiff, and have suppressed information.

Plaintiff states that even when accurate information is given to the Board of Education, the Board's Defendants ignore the information and continue is the same bad course of action. (Please note exhibits.)

WHEREFORE, Plaintiff respectfully requests that this Honorable Court judicially review the administrative record and the Decision of Defendants in this matter and grant the following relief:

1. That this Honorable Court disregard the time limitations on intentional torts as the Plaintiff discovered new evidence that was with held from the Hearing.

2. That the following persons be made a Defendant to this case for the LIES that they told against the Plaintiff, namely:

    a. PAUL VALLAS, Chief Executive Officer

    b. JOHN ROZNER, Hearing Officer

    c. DR. HAZEL STEWARD, Region Three Officer

    d. JACQUELINE A. BAKER, principal

    f. LAWRENCE HEAD, former principal

3. Find that Plaintiff's liberty interests and property interests in her employment have been denied without due process of law, contrary to the Fourteenth Amendment of the United States Constitution.

4. Reverse and set aside the Decision of the Defendants to terminate Plaintiff from her teaching position.

5. Order that all references to matters from the administrations of former principal LAWRENCE HEAD and current principal jacqueline a. baker be expunged from Plaintiff's personnel file every where, including the Police Department.

6. Order Plaintiff to be made whole for any pecuniary or other loss suffered as a result of her termination.

7. To grant the Plaintiff the sum of seven million dollars ($7,000,000) for the seven and more years that she has suffered from the LIES told by the BOARD and its agents.

8. That all labels such as "DNH"--Do Not Hire be removed from all records.

9. That she be restored to a position with the Chicago Public Schools..

10. That administrators at the Board be restrained from bribing, threathening, and intimidating acts against the Plaintiff.

11. Grant any and all equitable relief to Plaintiff that this Cour deems just.

WHEREFORE, PLAINTIFF PRAYS FOR JUSTICE because the Defendant(s) discriminated against the Plaintiff because of the Plaintiff's (a). Age (Age Discrimination Employment Act), (b) Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. @ 1981), (e) Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. @ 1981). and Retaliation.

*Dorothy Spraggins Gully*

PLAINTIFF

MRS. DOROTHY SPRAGGING-GULLY

Pro Se

444 East 88th Place

Chicago, Illinois 60619



**U.S. Depart** of **Justice**

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
Z 394 102 616

*Employment Litigation Section*
*P.O. Box 65968*
*Washington, DC 20035-5968*

February 11, 2000

Mrs. Dorothy Spraggins-Gully
444 E. 88th Place
Chicago, IL 60619

Re: EEOC Charge Against City of Chicago, Board of Education and Trustees, et al.

No. 210A00826

Dear Mrs. Spraggins-Gully:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice. If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney. If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires. Your request to the Court should be made well before the end of the time period mentioned above. A request for representation does not relieve you of the obligation to file suit within this 90-day period.

The investigative file pertaining to your case is located in the EEOC Chicago District Office, Chicago, IL.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Bill Lann Lee
Acting Assistant Attorney General
Civil Rights Division

by *Karen L. Ferguson*

Karen L. Ferguson
Civil Rights Analyst
Employment Litigation Section

cc: Chicago District Office, EEOC
City of Chicago, Board of Education and Trustees, et al.

# CHARGE QUESTIONNAIRE

Use Only          Name (Intake Officer)

This form is affected by the Privacy Act of 1974; see Privacy Act Statement on back before completing this form.

Please answer the following questions, telling us briefly why you believe you have been discriminated against in employment.

When was the most recent date the harm you are alleging took place? **June 10, 1999** (Date(s))

If you believe an employer discriminated against you, approximately how many employees does that employer have? **32,000** (Number)

NAME **Dorothy Spraggins — Gully**
(First)     (Middle Name or Initial)     (Last)     DATE **Dec. 1, 1999**

ADDRESS **444 East 88th Place**     TELEPHONE NO. (Include area code) **773-723-4008**

CITY **Chicago**     STATE **Ill.**     ZIP **60619**     COUNTY **Cook**

SOCIAL SECURITY NO. **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**

Please provide the name of an individual at a different address in your local area who would know how to reach you.

NAME **Kimberly Spraggins**     RELATIONSHIP **sister**     PHONE **846-1119**

ADDRESS **545 E. 92nd Street**     CITY **Chicago**     STATE **Ill.**     ZIP **60619**

I believe I was discriminated against by the following employer(s) ; labor union(s) ; employment agency(ies) . (Check all that apply)

NAME **Chgo School Board of Trustees of the Board of Ed. + Jacqueline Baker**     NAME **Chicago Teachers Union**

ADDRESS **125 S. Clark Street Chicago, Ill.**     ADDRESS **222 Merchandise Mart**

CITY, STATE, ZIP **60601**     CITY, STATE, ZIP **Chicago, Ill.**

PHONE NUMBER **535-8000**     PHONE NUMBER **(312) 329-9100**

Are you now employed by the Employer that you believed discriminated against you?

YES: From _____ (date) _____ (current position)

NO: I applied for _____ (position) on _____ (Date)

OR: I was employed as **a teacher** (position) until **4/99** (date) I was _____ (laid off, fired, etc.)

Cause of discrimination based on (Check appropriate box(es)):

[✓] Race   [✓] Color   [ ] Sex   [ ] Religion   [ ] Age   [✓] Retaliation

[ ] National Origin   [ ] Disability   [ ] Other - Explain briefly: **1999**

What action was taken against you that you believe to be discriminatory? What harm, if any, was caused to you or others in your work situation as a result of that action? (If more space is required, use the next page.)

1. Age negative comments
2. Defamation
3. False allegations of Insubordination
4. False report of assault + battery
5. Lack of discovery or false discovery
6. Lack of school tools, books, equipment
7. Pension loss
8. Secret Investigation
9. Unhealthy and unsafe workinga
10. Failure to properly represe
11. Planted lies
12. Suppression of Evid
13. Fraud + Misreprese
14. Medical problen

EEOC Form 283 (Test 10/94)

Continuation from page 1:

15. Failure to present all the information in cases
16. Failure to Call witnesses
17. Infliction of Emotional Distress
18. Invasion of Privacy
19. Malicious Prosecution about grades & conduct
20. Improper Justice —
21. Whistle-blowing about school matters and Local School Council matters
22. Changing Judge(s)
23. Employment denial (all)

Normally, your identity as a complainant will be disclosed to the organization which allegedly discriminated against you.
Do you [✓] consent or [ ] not consent to such disclosures?

Have you filed a complaint about the action you think was discriminatory with any other Federal, State, or Local Government Anti-discrimination agency? [ ] No [✓] Yes (If answer is yes, complete below.)

NAME OF SOURCE ASSISTANCE _____ DATE _____
RESULTS IF ANY: _____

Have you sought assistance about the action you think was discriminatory from any other agency, from your union, an attorney, or from any other source? [ ] No [✓] Yes (If answer is yes, complete below.)

NAME OF SOURCE ASSISTANCE _____ DATE _____
RESULTS IF ANY: _____

Have you filed an EEOC Charge in the past? [ ] No [✓] Yes (if answer is yes, complete below)

| APPROX. DATE FILED | ORGANIZATION CHARGED | CHARGE NUMBER (IF KNOWN) |
|---|---|---|
| | | |

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE _Dorothy Spragins-Gully_   DATE Dec. 1, 1999

DEC 1 1999

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1. FORM NUMBER/TITLE/DATE. EEOC Form 283, Charge Questionnaire (12/93).
2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a)
3. PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information in an acceptable form consistent with statutory requirements to enable the Commission to act on matters within its jurisdiction. When this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will, consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s).
4. ROUTINE USES. Information provided on this form will be used by Commission employees to determine the existence of facts relevant to a decision as to whether the Commission has jurisdiction over allegations of employment discrimination and to provide such charge filing counselling as is appropriate. Information provided on this form may be disclosed to other State, local and federal agencies as may be appropriate or necessary to carrying out the Commission's functions. Information may also be disclosed to charging parties in consideration of or in connection with litigation.
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. The providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge of discrimination. It is not mandatory that this form be used to provide the requested information.

Reverse Side of Form 283 (Test 10/94)

CHICAGO PUBLIC SCHOOLS

John J. Frantz DEPARTMEN
Director
Department of Teacher Accountability
312/535-7637
FAX 312/535-6981

**URGENT**

**MEMORANDUM**

DATE:        October 28, 1996

TO:          Marilyn Johnson

FROM:        John J. Frantz
             Department of Teacher Accountability

RE:          Dorothy Gully, Pope School Teacher

CC:          Paul Vallas, Patricia Harvey, Kathryn Nelson, Maribeth Vander Weele

This memorandum is a follow-up to the urgent memo you received from Maribeth Vander Weele on October 25, 1996, regarding a teacher at the Pope Elementary, Dorothy Gully.

In a conversation with the principal, Lawrence Head, on October 25, 1996, he informed me that (1) he has conducted one formal classroom visitation of Mrs. Gully, relative to the evaluation process (possible E-3), and (2) that he held a pre-disciplinary hearing on October 18 covering documented misconduct from the beginning of this school year. He also commented that it was his intention to recommend a 30-day suspension as a result of the October 18 pre-disciplinary hearing.

I suggested to the principal that he wait to send the request for the 30-day suspension to Employee Relations until he hears from the Law Department. Mr. Vallas has made it clear that he wants this teacher "removed from the classroom". Given the timeliness of the pre-disciplinary hearing, perhaps you may want to advise Mr. Head on his recommendation.

Mr. Head stated on Friday, October 25, 1996, that on two occasions during the morning, Mrs. Gully brought her entire class to the office where she used the phone to call 911. When the police arrived, Mrs. Gully requested that the police arrest a student who was misbehaving in her classroom. I was meeting with a group of parents from Pope when the school paged a parent in the group.

I trust this information will be of some assistance to you and I stand ready to assist you in any way that I can.

*Our Children . . . Our Future*

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

MAGISTRATE JUDGE LEVIN

GULLY-SPRAGGINS DOROTHY

**DEFENDANTS**

NOW KNOWN AS THE BOARD OF EDUCATION

CHICAGO SCHOOL REFORM BOARD OF

TRUSTEES OF THE BOARD OF EDUCATION

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **COOK**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

JUDGE REBECCA R. PALLMEYER

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

DOROTHY SPRAGGINS-GULLY, Pro Se
444 East 88th Place - Chicago, IL 60619

ATTORNEYS (IF KNOWN)

## 00C 2846

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

DOCKETED MAY 12 2000

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☒ 442 Employment / **HABEAS CORPUS:** |  | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other |  |  | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights |  |  |  |
|  | ☐ 555 Prison Condition |  |  |  |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Age, Color, and Race Discrimination

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII.** This case ☒ is not a refiling of a previously dismissed action.

☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE **MAY 10, 2000**

SIGNATURE OF ATTORNEY OF RECORD
Mrs. Dorothy Spraggins-Gully - Pro Se

REBECCA R. PALLMEYER

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

In the Matter of    Dorothy Spraggins-Gully    MAGISTRATE JUDGE LEVIN
Plaintiff
vs-    Board of Trustees of the
The Chicago School Reform
Board of Education/    Case Number:
Now known as    00C 2846
The Board of Education, Defendants

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

FILED 00 MAY 11 PH 1:08
CLERK U.S. DISTRICT COURT

| (A) | (B) |
|---|---|
| SIGNATURE *Dorothy Spraggins-Gully* | SIGNATURE |
| NAME Dorothy Spraggins-Gully | NAME |
| FIRM Pro Se | FIRM |
| STREET ADDRESS 444 E. 88th Place | STREET ADDRESS |
| CITY/STATE/ZIP Chicago, Il. 60619 | CITY/STATE/ZIP |
| TELEPHONE NUMBER 773/723-4008 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?   YES ☐  NO ☐ | MEMBER OF TRIAL BAR?   YES ☐  NO ☐ |
| TRIAL ATTORNEY?   YES ☐  NO ☐ | TRIAL ATTORNEY?   YES ☐  NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL?   YES ☐  NO ☐ |

DOCKETED MAY 12 2000

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?   YES ☐  NO ☐ | MEMBER OF TRIAL BAR?   YES ☐  NO ☐ |
| TRIAL ATTORNEY?   YES ☐  NO ☐ | TRIAL ATTORNEY?   YES ☐  NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?   YES ☐  NO ☐ | DESIGNATED AS LOCAL COUNSEL?   YES ☐  NO ☐ |

1-3